**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AUGUSTO PALOMINO,<br><br>Petitioner,<br><br>v.<br><br>STATE OF NEW JERSEY ET AL.,<br><br>Respondents. | Civil Action No. 15-2090 (ES)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Petitioner, Augusto Palomino ("Petitioner"), filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* D.E. No. 1, Petition ("Pet.")). While Petitioner raises several claims related to his sexual assault convictions, they are all procedurally defaulted. Accordingly, and as further detailed below, the Petition is denied *with prejudice*.

**I. BACKGROUND**

A jury found Petitioner guilty on two counts of second-degree endangering the welfare of a child, N.J.S.A. § 2C:24-4(a); one count of second-degree sexual assault, N.J.S.A. § 2C:14-2(b); and one count of first-degree aggravated sexual assault, N.J.S.A. § 2C:14-2(a)(1). Petitioner's charges stemmed from an alleged sexual assault of Petitioner's twelve-year-old daughter in the presence of his eight-year-old daughter. Petitioner was sentenced to a sixteen-year term of

imprisonment, subject to the No Early Release Act.[1] Petitioner's Judgment of Conviction is dated April 2, 2004. (*See* D.E. No. 10-32).

In 2006 Petitioner filed a motion for leave to appeal out of time, as he had not appealed the conviction earlier. Leave was granted, but the appeal was later dismissed for lack of prosecution. (D.E. No. 9 at 2). In 2010, Petitioner filed a petition for post-conviction relief ("PCR"). (*See* D.E. No. 10-21). Petitioner was over one year late in filing his state PCR application, and the state PCR court held that the petition was time-barred. (*Id.*). The PCR court also held that Petitioner did not meet either of the statutory exceptions to the time bar's enforcement, *i.e.*, excusable neglect or fundamental injustice. (*Id.* at 5-6). The decision was affirmed by the Appellate Division on the same grounds. (D.E. No. 10-27). The Supreme Court of New Jersey denied Petitioner's request for certification. (D.E. No. 10-31). Finally, on March 24, 2015, Petitioner filed the instant *pro se* Petition for a writ of habeas corpus.

## II. CLAIMS

Petitioner asserts the following grounds in his Petition:

Ground One: Ineffective assistance of trial counsel.

Ground Two: The trial court erred in improperly admitting Petitioner's confession despite an alleged *Miranda* violation.

Ground Three: Petitioner's sentence is both "excessive and illegal."

Ground Four: The PCR Court erred in denying Petitioner's request for an evidentiary hearing regarding his "falsified confessions."

(*See* Pet. at 5-11).

---

[1] *See* N.J.S.A. § 2C:43-7.2(d) (providing that a convicted felon must serve at least 85% of the given sentence).

## III. DISCUSSION

### A. Standards Governing Petitioner's Claims

Section 2254 of Title 28 of the United States Code provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under Section 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### B. Actual Innocence Allegation

As an initial matter, the Court addresses Petitioner's allegation of actual innocence. As

3

noted above, Petitioner's petition for PCR was denied by the PCR court on state law procedural grounds. (*See* D.E. No. 10-21, PCR Opinion ("PCR Op.")). After the Appellate Division's affirmance of the PCR court's ruling and the Supreme Court of New Jersey's denial of certification, Petitioner filed the instant petition for a writ of habeas corpus with this Court. After Respondents filed a Response, (D.E. No. 11), Petitioner submitted a Motion for a Subpoena Duces Tecum, seeking an allegedly exculpatory videotape and claiming "actual innocence" for the first time.[2] (D.E. No. 12, Motion for *Duces Tecum* (Mot.)). Because habeas petitions that are filed *pro se* are to be construed liberally, the Court will allow Petitioner to raise actual innocence as a defense for the first time in the pending motion. *See Hubbard v. Pinchak*, 378 F.3d 333, 337-38 (3d Cir. 2004) (holding that actual innocence can be raised in a traverse when using the "more forgiving lens" of a *pro se* petition (citing *United States v. Garth*, 188 F.3d 99, 108 (3d Cir. 1999))). Even after making such an allowance, however, the petition must be denied as procedurally defaulted.

C. Petitioner's Petition is Procedurally Defaulted[3]

Petitioner filed his original PCR petition "six years and one month after the entry of his judgment of conviction[.]" (PCR Op. at 2). Under New Jersey law, a petitioner's first petition for PCR must be filed

> no more than five years after the date of entry of the judgment of conviction that is being challenged unless he alleges facts showing that the delay was due to defendant's excusable neglect *and* that there is a reasonable probability that if the defendant's factual assertions were found to be true, enforcement of the time bar would result in a fundamental injustice.

---

[2] The Court addresses the discovery aspects of this motion herein.

[3] Respondents also argue that the petition was submitted to the Court outside the one-year statute of limitations period provided by AEDPA. (*See* D.E. No. 13 at 1-2). Because the petition is denied on other grounds, the Court need not reach this argument.

4

N.J. Ct. R. 3:22-12(a)(1) (emphasis added). The PCR court, hearing Petitioner's first petition, held that Petitioner did not plead sufficient facts to meet the standard for either excusable neglect or fundamental injustice. (*Id.* at 3). In terms of excusable neglect, Petitioner argued that his "inability to speak English prevented [him] from determining what needed to be done." (*Id.*). The PCR court found that Petitioner's assertions were unsupported by "any specific evidence, nor did they provide any legal or factual basis for the court to find excusable neglect . . . ." (*Id.* at 4). In fact, the PCR court found that Petitioner's claims were "contradicted by his demonstrated ability to file an earlier post-conviction motion for leave to file an appeal *nunc pro tunc* in 2006." (*Id.*).

The PCR court also found that Petitioner's filings failed to meet the "fundamental injustice" exception to the time bar. In order to meet the fundamental injustice exception, a petitioner must show that the alleged wrongs were so egregious "as to create a reasonable probability that these deficiencies materially contributed to his conviction." (*Id.* (citing *State v. Mitchell*, 126 N.J. 565, 576 (1992))). The PCR court held that Petitioner's arguments regarding ineffective assistance of trial counsel and the admittance of his signed confession failed to meet this standard; thus, the court enforced the time bar. (*Id.* at 6). The Appellate Division affirmed, writing that Petitioner "failed to show excusable neglect or a reasonable probability" that his stated assertions were true. (D.E. No. 10-27, Appellate Division Opinion at 4).

In general, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus "[o]ut of respect for finality, comity, and the orderly administration of justice." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). This is a reflection of the rule that "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Id.* at 392; *see also Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977) (concluding that "failure to timely object to admission" of a confession, as required under Florida

5

procedure, "amounted to an independent and adequate state procedural ground" preventing federal habeas review). Thus, because Petitioner's petition for PCR was decided on adequate and independent state law procedural grounds, the instant petition is procedurally defaulted. *See, e.g., Dretke*, 541 U.S. at 392-93; *Coleman v. Thompson*, 501 U.S. 722, 723 (1991) ("[F]ederal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody."); *Torres v. Ricci*, No. 08-4046, 2010 WL 99268, at *16 (D.N.J. Jan. 6, 2010) ("A procedural default occurs when a habeas petitioner's federal claim is 'barred from consideration in the state courts by an "independent and adequate" state procedural rule.'" (quoting *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002))).

The principal exceptions to the general rule precluding federal review of procedurally defaulted habeas claims are for petitioners who can show "cause and prejudice," something Petitioner does not argue here, or that a "miscarriage of justice" will occur absent review. *Cristin v. Brennan*, 281 F.3d 404, 414 (3d Cir. 2002). An allegation of "actual innocence," if credible, is one such "miscarriage of justice" that enables courts to hear the merits of the habeas claims. *Hubbard*, 378 F.3d at 337.

In *Schlup v. Delo*, the Supreme Court stated that claims of actual innocence are rarely successful because the necessary evidence is unavailable in the vast majority of cases. *See* 513 U.S. 298, 324 (1995). Indeed, in *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court further explained the type of evidence that must be presented. According to *House*, a petitioner must support his allegations of constitutional error with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—

6

that was not presented at trial." *Id.* at 537 (citing *Schlup*, 513 U.S. at 324). The *Schlup/House* standard is "demanding and permits review only in the extraordinary case." *Id.* at 538 (citations omitted). Petitioner's burden here is to demonstrate that it is "more likely than not any reasonable juror would have reasonable doubt" regarding his guilt. *Id.*

In the instant case, Petitioner argues actual innocence as a gateway to habeas review. (*See* Mot. ¶ 5). Because Petitioner's claims were decided at the state level on an "adequate and independent state law procedural ground," *Hubbard*, 373 F.3d at 338, the petition must be denied as procedurally defaulted unless Petitioner meets the stringent standard outlined above.

Petitioner's claim of actual innocence rests entirely on a videotape that he seeks to procure by way of his Motion. (Mot. at 1). Petitioner claims that the State of New Jersey possesses a videotape of Petitioner's then twelve-year-old daughter "clearly stat[ing] that Petitioner never did touch or otherwise molest[] his daughter as the state alleges." (*Id.*). Respondents oppose the motion by merely arguing that Petitioner failed to show the "good cause" necessary to grant Petitioner's motion. (D.E. No. 13); *see* Rule 6 of the Rules Governing § 2254 Cases ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery"); *Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011) ("A habeas petitioner may satisfy the 'good cause' standard by setting forth specific factual allegations which, if fully developed, would entitle him to the writ [of habeas corpus]." (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969))).

Assuming, *arguendo*, however, that Petitioner demonstrates such good cause, and the videotape shows what Petitioner alleges that it shows, such evidence would still fail to meet the standard announced in *Schlup* and *House* for excusing procedural default. That is because the evidence Petitioner seeks was presented to the jury at trial, making it insufficient to excuse such a

7

default. As explained by the Supreme Court in *House*, a petitioner seeking to excuse procedural default with a claim of actual innocence must present "*new* reliable evidence ... that was not presented at trial." 547 U.S. at 537 (emphasis added). Petitioner's then twelve-year-old daughter already testified at trial that Petitioner did not sexually assault her. (*See* D.E. No. 10-7 at 4 ("Q. Okay. Lizette, did anybody ever touch you on any of [the private] parts of your body? A. No.")). The evidence Petitioner seeks to obtain and submit in support of his actual innocence claim is not "new."

Furthermore, despite Petitioner's victim daughter testifying that Petitioner did not touch her, the jury convicted Petitioner of that conduct. Critically, Petitioner's younger, then eight-year-old daughter testified, in detail, to the sexual assault that she claimed she witnessed. (*Id.* at 23 ("Q. Did you ever see anybody touching somebody else on [their private] parts? A. Yes. Q. Okay. Who did you see touching somebody else on those parts? A. My father. Q. Okay. And who was your father touching? A. My sister.")). Following that, a doctor testified that it is not unusual for child victims of sexual assault to deny everything after experiencing a trauma. (*See id.* at 84). Also entered into evidence, over defense counsel's objection, was Petitioner's signed confession. (D.E. No. 10-6 at 63-69). The jury credited the confession, coupled with the State's witnesses, over the child victim's testimony. This Court fails to see, and Petitioner does not explain, how the same testimony, found not credible by the jury during his trial, would now cause a reasonable juror to have reasonable doubt regarding his guilt.

Thus, not only does the video-recorded statement of Petitioner's victim daughter not qualify as "new reliable evidence . . . that was not presented at trial," *House*, 547 U.S. at 537, but Petitioner has failed to demonstrate that it is "more likely than not any reasonable juror would have reasonable doubt" regarding his guilt, *id.* at 538. Therefore, because Petitioner fails to meet the

standard set forth in *Schlup* and *House* to excuse his procedural default on actual innocence grounds, the petition is denied.[4]

### IV. APPOINTMENT OF PRO BONO COUNSEL

Also pending before the Court is Petitioner's application for the appointment of pro bono counsel. (D.E. No. 6). In determining whether the appointment of pro bono counsel is appropriate, the Court "must consider as a threshold matter the merits of the plaintiff's claim." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Indeed, before the Court may exercise its discretion in favor of appointment, "it must first appear that the claim has some merit in fact and law." *Id.* (internal quotations omitted). Here, as discussed above, because the petition is procedurally defaulted and not subject to the actual innocence exception, Petitioner's application for counsel is moot. However, even if Petitioner's claim were not procedurally defaulted and met the threshold noted above, he would still fail the test outlined in *Tabron*.

Because "[i]ndigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel," whether a district court grants an application for pro bono counsel depends on several factors, including:

> 1. the plaintiff's ability to present his or her own case; 2. the difficulty of the particular legal issues; 3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; 4. the plaintiff's capacity to retain counsel on his or her own behalf; 5. the extent to which a case is likely to turn on credibility determinations; and 6. whether the case will require testimony from expert witnesses.

*Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002) (citing *Tabron*, 6 F.3d at 155-57).

Here, Petitioner's ability to present his own case, "perhaps the most significant of *Tabron*'s post-threshold factors," *id.* at 501, militates against appointing counsel for Petitioner. Petitioner's

---

[4] Because the petition is denied with prejudice, Petitioner's pending motion for a subpoena duces tecum, (D.E. No. 12), is denied as moot.

numerous *pro se* filings, dating back to 2006, evince Petitioner's familiarity with the legal system and thus tip the scales away from appointing counsel. *See Gordon v. Gonzalez*, 232 F. App'x 153, 157 (3d Cir. 2007) (using *pro se* filings as evidence of ability to present own case).

The second factor, the difficulty of the legal issues, also tips away from appointing counsel. Petitioner asserts an ineffective-assistance-of-counsel claim, which focuses on alleged failures of Petitioner's trial counsel. (*See* Pet. at 6). Petitioner also challenges the admittance of his confession, contending that his statement was fabricated and that he never confessed. (*See id.* at 8). The third ground for relief argues that aggravating and mitigating factors were improperly weighed and, thus, Petitioner's sentence is "excessive and illegal." (*Id.* at 9). Finally, Petitioner argues that the PCR court should have granted him an evidentiary hearing as to his allegedly falsified confession. (*Id.* at 11). Nowhere does Petitioner explain how the legal issues attending his claims are of sufficient complexity to warrant appointment of counsel under this factor. In any event, the Court finds that nothing in the Petition suggests that this matter involves any complex legal issues. Petitioner's claims are not of a level of legal complexity to warrant appointment of counsel; indeed, all of Petitioner's claims arise out of areas in which the case law is well-developed and clear. *See Parham v. Johnson*, 126 F.3d 454, 459 (3d Cir. 1997) ("Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed." (citing *Tabron*, 6 F.3d at 156; *Maclin v. Freake*, 650 F.2d 885, 889 (7th Cir. 1981) ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis."))).

Next, there does not appear to be any investigation necessary in this case, thus discouraging the appointment of counsel. In contrast to *Montgomery*, 294 F.3d at 503, wherein discovery of documents was needed and difficult to attain, the instant case is based around a number of

objections that Petitioner's defense counsel allegedly failed to make and witnesses he allegedly failed to interview. (*See* Pet. at 6). Similarly, Petitioner does not argue in either his petition or his application for counsel that expert testimony will be necessary to proceed on the merits. As such, this factor also tips away from appointing counsel.

Moving to credibility, as per the Third Circuit, "it is difficult to imagine a case that does not" rely on credibility determinations. *Parham*, 126 F.3d at 460. Thus, this factor encourages appointing counsel only when the case "was solely a swearing contest." *Id*. Because the jury that convicted Petitioner considered expert testimony and a signed confession in addition to making credibility determinations, this factor tips away from the appointment of counsel as well.

The final factor, "whether the plaintiff can attain and afford counsel on his own behalf," *id*. at 461, is the lone factor that clearly tips towards appointing counsel. Indeed, Petitioner's entire application for pro bono counsel centers on the details of his indigence. (D.E. No. 6-1 at 3-5). However, courts have "question[ed] the independent weight of this factor, as indigent litigants by definition will almost always be able to satisfy it." *Gordon*, 232 F. App'x at 157. Also worth noting is that, here, Petitioner was denied *in forma pauperis* status by the Court when the petition initially filed. (D.E. No. 2).

Therefore, even if the petition were not procedurally defaulted, Petitioner would not be appointed counsel because, although he is indigent, on balance the evidence suggests he is able to present his own case, the legal issues involved are not complex, his trial was not a mere swearing contest, and his claims require no discovery or expert testimony. Accordingly, the Court finds that the appointment of pro bono counsel in this case would not be warranted.

11

## V. CERTIFICATE OF APPEALABILITY IS DENIED

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local Appellate Rule 22.2. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The discussion of Petitioner's claims above demonstrates that Petitioner has not made such a showing, and this Court will not issue a certification of appealability.

## VI. CONCLUSION

The Court concludes that, because the petition is procedurally defaulted and Petitioner failed to satisfy any exception that would excuse said default, the instant action is barred and Petitioner's petition is denied *with prejudice*, and a certificate of appealability shall not issue. An appropriate order accompanies this opinion.

_____
Esther Salas, U.S.D.J.

12